### THORNING et al. v. BORISKI et ux.
### (No. 3210.)

(Court of Civil Appeals of Texas. Texarkana. April 7, 1926. Rehearing Denied April 22, 1926.)

**1. Physicians and surgeons ⬤⟳15.**

While erroneous diagnosis leading to unnecessary operation is not usually basis for damages, there are occasions when it may be.

**2. Physicians and surgeons ⬤⟳18(8)—Evidence held to show negligence in diagnosis leading to operation.**

In suit for damages due to negligence in performing an unnecessary abdominal operation on plaintiff in advanced state of pregnancy, evidence as to time for keeping pregnant woman under examination and methods used in diagnosing condition *held* to justify conclusion that further examination would have enabled physician to correct original diagnosis and discover pregnancy, and that failure to do so before operating was lack of due care.

**3. Trial ⬤⟳194(1), 240.**

Requested special charges which are argumentative and on weight of evidence *held* properly refused.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by A. J. Boriski and wife against W. B. Thorning and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for appellants.

E. T. Chew and W. J. Howard, both of Houston, for appellees.

HODGES, J. The appellants are members of a partnership engaged in the practice of medicine and surgery. In February, 1923, one of them performed an abdominal operation on Mrs. Boriski, one of the plaintiffs in this suit. After making the necessary incision, it was discovered that the diagnosis was erroneous, and that the patient was in an advanced state of pregnancy. The wound was closed in the usual manner, but on account of her condition the flesh did not reunite and a hernia resulted. In about three months after the operation Mrs. Boriski gave birth to a child. During the interval between the operation and birth of the child, and since then, she has endured much pain and suffering.

This suit was filed to recover damages, which she alleges were due to negligence in performing an unnecessary operation. The specific acts of negligence charged may be summarized as follows: (1) Acting too hastily, and failing to keep her under observation a longer period of time; (2) failing to use the stethoscope or the X-ray in diagnosing her condition; (3) failing to use tests known as "repersussion" and "ballottement"; (4) failing to make a physical examination just before the operation and while the patient was under the influence of an anesthetic. In answer to special interrogatories, the jury found that the appellants were negligent in failing to discover the true condition of Mrs. Boriski and in advising an operation.

At the instance of the appellants, the following special charge was given:

"Gentlemen of the jury, the law did not make the defendants insurers of the correctness of their diagnosis of the plaintiff Mrs. Boriski, nor did the law require them to guarantee that they would not make mistakes. Only in the event the mistake in diagnosis and the resulting operation upon the plaintiff Mrs. Boriski could reasonably be attributed to a lack of ordinary care, as that term has been defined to you by the court, can you say, in answer to the question propounded to you concerning negligence, that the defendants were guilty of negligence toward the plaintiff Mrs. Boriski."

It is contended in this appeal that, since no unskillfulness or negligence in performing the operation was alleged or proved upon the trial, the jury should have been directed to return a verdict for the appellants. The mere fact that an erroneous diagnosis was made, it is claimed, does not furnish a ground for a recovery of damages. Mrs. Boriski testified, in substance, as follows:

She was employed as a janitress in the building where the appellants' offices were located. She was the mother of several children then living. Some time in June, 1922, she had suffered a miscarriage, and soon thereafter became pregnant again. About the 15th of December, being troubled with pains in her abdomen and some occurrences of flooding, she consulted Dr. Cruse, of the appellants' firm. He and his associate, Dr. Stokes, each made an examination, using what is called a "bimanual" and "palpation" methods. They told her that she was afflicted with fibroid tumors—a large one and two small ones—and advised an operation at an early date. They also discovered that she

was pregnant, but concluded it was of only about two months' duration. Two weeks later she and her husband again consulted Dr. Stokes, and were again advised by him that an operation was necessary and that the sooner it was performed the better it would be for her. On February 2d following she went to the hospital and submitted to an operation. She was put under the influence of ether, and the operation was performed without any further examination.

The physician who did the work admitted that his diagnosis was incorrect, that he had been deceived by the contractions of the uterus, which he mistook for tumors. He testified that after making the incision he discovered that the patient was in an advanced stage of pregnancy.

It is not denied that because of her condition the flesh failed to reunite after the operation, and that a continued hernia existed at the time of the trial. It is also conceded that the evidence shows that to relieve that condition another operation will be required.

[1] While an erroneous diagnosis leading to an unnecessary operation is not usually a legal basis for damages, there are occasions when it may be such. Dr. McMeans, a witness for the appellees, testified as follows:

"With reference to the ordinary examinations that are customarily made by the general run of practitioners: The woman should be under the physician's care from the time of beginning of pregnancy, if possible; examinations, bimanual, should be made from time to time to determine the shape, size, and consistency of the uterus, and in the last three months of pregnancy a diagnosis of pregnancy is usually made by hearing the fetal heart sounds or heart beats by means of the stethoscope, by palpating the fetal outlines, and by active and passive movements of the fetus.

"If it is not generally known by members of my profession that a pregnant uterus will sometimes contract to resemble or simulate tumors, it should be. When a physician makes an examination of a woman to determine the extent and duration of pregnancy, and on first examination, by palpating the abdomen and bimanual examination, he is of the opinion that the patient, in addition to being pregnant, approximately two months has three fibroid tumors, he should not base his opinion upon one examination alone, but should make repeated examinations, and our profession so teaches. If a patient represents that she has miscarried four months previously, and the doctor's diagnosis is pregnancy in its earlier stages, together with fibroid tumors, the correct procedure would be careful watching of the woman's condition. No operation procedure is justified until such symptoms intervene that would injure the life of the woman.

"It is my opinion that a pregnant uterus, which has contracted in such a shape as to resemble tumors, will usually regain its normal shape and condition under an anesthetic, and a woman's true condition, no matter whether she be pregnant or have tumors, can be more easily ascertained when she is relaxed under an anesthetic. It is the custom of our profession to use all methods at hand to ascertain the true condition of a woman before submitting her to an operation. The operation should not be performed until a full and complete examination be made to determine her true condition, and, where there is a doubt, a bimanual examination should be made upon the patient before the operation and while she is under the ether."

Dr. Cruse, one of the appellants, testified:

"A fetus grows faster the last month of pregnancy than at any other time. At four to six and seven months the growth is steady all the time. It is a fact that a fetus grows faster than fibroid tumors; fibroid tumors usually are slow growth."

Dr. Stokes testified as follows:

"At the time I opened the abdomen of the plaintiff I then saw what appeared to me to be a thoroughly relaxed uterus under the anesthetic given her, and the uterus appeared as about seven months' pregnant uterus. It is a fact that a contracted, pregnant uterus, simulating a tumor, under a complete anesthetic may relax thoroughly. I did not examine her while she was under the anesthetic and before I operated on her. I do not know if I had examined her at that time that I would have discovered that she was only a pregnant woman and had no tumors. I do not know whether or not I could have discovered her true condition under the anesthetic before the operation as easily as I did discover it after cutting into her abdomen and viewing her relaxed uterus."

[2] This testimony justified the conclusion that a further examination of Mrs. Boriski would have revealed her true condition and would have enabled the attending physicians to correct their original diagnosis. We think the jury had a right to conclude that the failure of the appellants to make further examinations before operating was a lack of that degree of care which should have been exercised under the circumstances.

The charge on the issue of damages is objected to on the ground that it authorized the jury to take into consideration suffering and conditions not caused by the operation. No such construction can be placed upon the charge without disregarding the plain meaning of the language used.

[3] The refusal to give a number of special charges furnishes the basis of other assignments. Some of these charges were argumentative and on the weight of the evidence. Others were uncalled for by reason of the charges which had been given.

The judgment will be affirmed.